I'm sorry to jump the gun there. No, it's fine. You can't. You don't have eyes in the back of your head. You may proceed. May it please the Court, I'm Scott Meyer for the appellant Migdia Chinea-Varela. We're here for the second time on a case against CBS and the Writers Guild that essentially emanated out of the Half Pay for Hispanic Screenwriters program. My client was an accomplished screenwriter. She had earned approximately half a million dollars over 10 years writing screenplays. And that all changed in 1993. At that time, when this program came in, she was sought a job at CBS, and she was steered into this program. And then there are other allegations that happened. And I want to right now focus on the most important aspect that we view of the case, which is the Half Pay program. I'm not going to — I don't intend, unless the Court has a question, to cover every aspect of the case. There are quite a lot of — There's a lot of issues, and we've got the briefing, and so we appreciate that. So if you'll focus, that would be helpful. I want to focus mainly on the Half Pay for Hispanic Screenwriter program. There is an allegation that the plaintiff was qualified, which is paragraph 34 of the Third Amendment complaint. There's also some briefs that were later in the summary judgment on the retaliation issues, which also support that. The Dawson Declaration shows that the plaintiff was qualified. And also the Anderson Declaration, which is actually a declaration by the defendant, CBS, also says that she submitted one of three screenplays for the Elaine Gonzalez for TV movie, and one of the top three screenplays that were under consideration for that. Hers wasn't selected for whatever reason. But that — But I just ask a point of clarification, because there are so many claims. Yes. Are you talking about the retaliation claim now or a different claim? Indirectly, I am talking about the discrimination. I'm just saying there were some contentions by defendants that she — maybe she — Okay. But what legal claim — I'm just trying to hook up your argument with the many legal claims. I'm just trying to put it in the right box. Okay. I'm talking about the discrimination on the half-pay program. All right. Thank you. That indirectly, although we never reached a summary judgment on that claim, that evidence would have supported the fact that the plaintiff was qualified. Moving on to — she sought the employment, which is in paragraph 33. And in paragraph 33A, it alleges that she was steered at that point in November of 1993 into this half-pay program. So she sought employment, she was qualified, and then she steered into this half-pay program. Discrimination under the line of cases Sparrow and other cases of the like say that discrimination claims can be very simply pled. You just basically need to say, you know, I was — I sought work and I was discriminated against. Well, she pled more than that with regard to the half-pay program. She sought the work. She was directed into this half-pay program. There's a dispute. I acknowledge that the defendants say the program is not exactly as we say. That's not an issue that should be addressed in a motion to dismiss, as Judge Letts did in this case. He dismissed and took out the heart of the case by just essentially wiping out the entirety of the discrimination claims under the motion to dismiss, even though the allegations were there to proceed at least to — This is on a motion for summary judgment, isn't it, Counselor? Yeah. There was encompassed — previously there was a motion to dismiss where he took out the discrimination claims. He left in two claims for retaliation. Okay. And the retaliation claims are decided on summary judgment? Right. Okay. But the discrimination claims were wiped out earlier on the motion to dismiss. And is that part of this appeal? Yes, it is, Your Honor. And Judge Letts should have at least allowed the plaintiff to proceed to discovery and summary judgment, if not, in our opinion, to trial on that issue. I mean, the defendants can present what could have presented at the time whatever evidence they want in the form of summary judgment or at trial that the program wasn't, as the plaintiff alleged. But as alleged, the program was — the plaintiff applied for a regular job at CBS. She was steered into this other program, which paid less than half the rate for MBA for the Writers Guild, the scale, the union scale. Was the motion to dismiss, counsel, that's the 12b-6. Doesn't that apply only to the Writers Guild, or does that apply to CBS as well? It applies to both. Okay. As to the Writers Guild on the 12b-6, why is — why is the district court incorrect on that, since the WGA wasn't hiring? Well, they were aiding and abetting CBS in this program. They're the ones who actually set up the program in conjunction with CBS. And the law is quite clear. You don't have to necessarily just be the employer. Both FEHA, the Fair Employment and Housing Act, under California law, as well as Title VII, covers those that also aid and abet in the discrimination. So they would — they're assisting CBS in this program. The defendants also made the contention, in terms of the charges, that the allegations against CBS were not within the scope of the charge. Well, they keep focusing on the wrong charge. The charge that has to do with the discrimination is the first charge. CBS is mentioned in the charge. There's a case law that says that the responding party has to be either listed at the top of the responding party's section or somewhere within the charge. And CBS is listed in the charge, paragraph 1A of the charge, dated 7-6-94. And that was a claim for both national origin discrimination and retaliation, for allegations dated 11-22-93, and it was a continuing action. The second charge related to the Frank Dawson incident, which was — Frank Dawson was a — he was a producer for CBS, and defendants contend he was an independent producer. And that goes to partially the summary — one of the summary judgment issues. For contention, he should be viewed as an actual employee or an agent for CBS in that regard. And that's what the second charge is about. And there's a third charge, and that had to do with when the Writers Guild did not stop speaking to the plaintiff based upon her charges and her other protected activities. So the first charge is this main charge that's the — where this case is in terms of the discrimination. There's another issue. We had made a motion to recuse Judge Letts. We believed he was biased against the plaintiff and myself, and made comments to that effect. And he also — well, more in the sense of against plaintiffs in general. But he also showed undue familiarity with CBS's — some of their top officials and some defense counsel. And in addition, his bias was shown by the fact he was openly hostile to the Ninth Circuit decisions. Well, we would have to recuse a lot of judges if that were the case. I mean, is that — I've never heard of that. What if he was sort of silently hostile? What? What if he was silently hostile? I mean, openly hostile. Well, I mean, judges at times, you know, make erroneous rulings. From time to time. And that's why we're here. But if they go out of their way to point out the fact that they disagree with, you know, the controlling law of the circuit, you know, they disagree with essentially say — Well, but of course, I mean, it's one thing to disagree. Obviously, they disagree. They came to one conclusion. Three judges came to another conclusion. So there is that disagreement. The issue isn't whether they disagree or — the issue is whether or not they're going to follow the law of the circuit. We have to follow the law of the circuit. Right. We disagree with it. I'm sure the circuit may disagree with what the Supreme Court says. Right. But so — and obviously, there are differences of opinion that you may — and you may not — you actually — a judge may hold very strongly the views that they have. But the question is whether or not — which views may be contrary to the views of a higher authority. The question is whether you're going to follow it or not. Right. Does that indicate at all that somehow it wasn't going to follow the opinion of the Ninth Circuit? Well, you can't directly say that. But if you read — Here's what he said. At one point, he said, I like this. In my judgment, the Ninth Circuit is correct. That complaint would not survive a Rule 8 test. So, I mean, I read through all of his discourse. And he didn't seem to say, you know, damn the torpedoes. I'm going to do what I want to do. I don't care what the Ninth Circuit says. He might have expressed some views. But, of course, the ultimate test here is whether he followed the law, which is what we're trying to look at. Right. Particularly in a summary judgment context. So, you know, then there was a discussion about his law clerk, which turned out to be kind of a red herring. So I just didn't see anything on the record that would suggest a bias here that would be, you know, subject to reversal and appeal. Maybe there's something else. Are there any other facts that you think we should look to? Well, the facts were all set forth in the brief. Other than set forth in the brief, I'm not aware of anything further than has already been addressed there. While you're up there, at some point, would you address the exhaustion issue and whether, well, as to CBS, why failure to exhaust the administrative Perhaps the discrimination claim. Well, in terms of which claims are you focusing on? Because I sort of already addressed that when I was talking about the charges. The charge number one covers the discrimination. Right. Well, what about the retaliation, CBS and retaliation? Okay. Well, in terms of the Frank Dawson incident, that was covered by the second charge. The other incident, Dillion-Gonzalez, admittedly, there was not a formal charge filed on that. But there is case law that holds that if it would be fruitless to file another charge during a pendency event, you know, the EEOC investigation, and we would contend it should also apply during a lawsuit having to do with other facts that emanate from the same circumstances, that it's pointless because there's no. Now, the Dawson incident, was that against the Writers Guild or CBS in the administrative context? That was against CBS. And that's a retaliation claim? What's the timing of the Dawson incident vis-a-vis the filing of the administrative complaint? Well, the Dawson one was dated August 12, 1994, is the earliest, it says, and the latest, February 21, 1995. The box that was checked was national origin on it. And there was a box for retaliation, right? Right. And you didn't check that? Yeah. Well, that's a discrimination claim, right? Unfortunately, this was intended to go to the allegation. It is a discrimination claim. Okay. In addition to retaliation, yes. Fortunately, sometimes when these are filled out by the EEOC, they don't have lawyers present, as in this case, and the EEOC doesn't always check all of the boxes. Okay. But there wasn't anything evidently in the discussion or the description of the allegations that would have led somebody at the EEOC to think that there was a retaliation claim here. We didn't file a second complaint with the EEOC or anything else that would sort of clarify that this was a complaint about retaliation. Well, there isn't any way of notifying CBS or notifying the EEOC that it's looking for a retaliation claim. You have to exhaust those remedies before you can bring the suit. Is that right? Well, it has to be within the scope of the charge. It doesn't have to – everything doesn't have to be set forth in there if it's something the EEOC would investigate. Well, when we have a separate box there and the EEOC considers a retaliation claim to be different from a claim based on national origin, then it's a matter of both putting the EEOC and a potential defendant on notice as to what the nature of the claim is. And we didn't do that. Admittedly, that box there was not checked on that second charge. And we could have corrected it at some point. Presumably, you could have alerted the EEOC to the fact that we didn't have all of the allegations down on the form. But we didn't do that. It was not changed from what it was. That's correct. Okay. Well, how have you exhausted your claims then for the EEOC? Well, in a sense, it's within the scope of the charge, which could have been within their investigation according to case law. It would be something they would investigate. It was as to the discrimination. We did list that. Right. That is 33B, which is the second charge as to the discrimination. It's also listed, again, for retaliation. Okay. And going back to the first charge, that is paragraph 33A, which applies both to CBS and the Writers' Guild and CBS. That's the first charge, which is where it's listed in the body of the charge. That was intended for 33A, which is the half-pay allegation. Does your retaliation claim go at all to the Craig Anderson incident or just to the Dawson incident? The retaliation goes also to the Craig Anderson. It does go to Craig Anderson. It goes to Alien, Craig, and Dawson. The retaliation? How could it go to the Anderson incident since the Anderson incident occurred several years after the filing of the complaint with the EEOC? I misunderstood your question in that case. The charge specific when it was written did not. But the purpose of these charges is to, as stated in the case, is to facilitate conciliation with the parties. And in this case, there would have been no purpose for the further investigation by the EEOC because it was fruitless to try to conciliate these issues. Even though you now had an additional incident in the Craig Anderson allegation? You had additional facts that you didn't have the first time that you filed with the EEOC. I believe I cited a case in the brief that does state that there are circumstances you don't necessarily need to file an additional charge when new allegations occur during the pendency of the EEOC investigation. The main error, going back to that the judge made, was dismissing the half-pay allegations out of the lawsuit, which was done at the motion-to-dismiss stage. And it should have been allowed to proceed through discovery, summary judgment, and the plaintiff's opinion to trial. I have nothing further to add other than to leave any remaining time I have for rebuttal. You might want to save some for rebuttal, then. And we'll hear from the other side. Good morning. May it please the Court. Anthony R. Siegel of Reuters, representing Reuters Guild of America, West, Inc. I'll be very brief. This is an unusual case. We're five years into litigation. We're still quibbling about compliance with Rule 8. And the Writers Guild, at least, is before the Court on the granting of a motion to dismiss. This isn't just empty formalism from our standpoint. We are still sort of guessing about what we're alleged to have done here. What we did do that is clear from the record is that, in 1993, we negotiated this access program with CBS, which is signed to our industry-wide agreement. The documents are in the record. They were attached to the second amended complaint. They're in Excerpt of Record 203. It's really a pretty simple program in its operation. It is not, as the appellant says, a hiring program. It is really nothing more than the creation of a new trainee classification in an existing collective bargaining agreement. It's very carefully limited and bounded in a number of respects as to the amount of time that people can be kept in the trainee classification, that they can only go through the trainee program once. Most importantly, that if they do real sort of journeyman writer's work, that they get paid the regular rates under the collective bargaining agreement. It is, by its very nature, a facially neutral program. Where we completely go off the tracks is the propensity, first, of the appellant to refer to defendants in the collective and not to make distinctions as between the writer's guild, which is a collective bargaining representative in a labor organization, and an employer. Nowhere is it alleged anywhere in the third amended complaint that the guild played any role in the hiring process. Since the program itself is facially neutral, there can have only been discrimination. Breyer. So there's no evidence of aiding and abetting? There's not even an allegation of aiding and abetting. Aiding and abetting really is a concept that doesn't creep into the briefs until the reply brief, cited in connection with an FEHA case. So, again, after all these years, we really are here wondering what it is that we're alleged to have done. This isn't a hiring hall case. Unions can violate the discrimination laws in the operation of a hiring hall or in those cases where contractually they do exert some power or authority over hiring. Much is made about membership qualifications, but there's no answer to our very simple point that membership doesn't and can't, as a matter of federal law, determine eligibility for hiring. Finally, there is a lot of sort of we'll call it chatter in the briefs about things that may have been harassment. Well, first, there was never any administrative complaint filed about racially hostile work environments or anything that could be construed as harassment, so there's no exhaustion as to that point. And more important than that, substantively, what's alleged to be harassment doesn't have any connection or nexus to any term of employment. It's really, as to the writer's guild, the internal debate that ensued about whether this program was a good idea. I will, with that, duck out of the way unless the panel has questions. Thank you. Thank you. Good morning. May it please the Court. My name is Henry Shields. I represent Defendants CBS Broadcasting, Inc., Jeff Sagansky, and Charles Seeger. Under the theory of last in, first out, I'd like to address one of the issues that was raised last by counsel for Plano. And that is the Craig Anderson issue, because that is an issue that I think illustrates the defects that continue to afflict this action and led to the dismissal and led to the summary judgment motion. It deals with, in this case, the question of exhaustion. Plano claims that the exhaustion of the administrative remedies with respect to the Craig Anderson issue should be deemed to have occurred back in 1995 with that complaint. Well, if you step back and you look at when the Craig Anderson incident occurred late 1999, what happened in the interim? What happened in the litigation? In the litigation, when the Craig Anderson incident occurred, the case in the district court had been dismissed. The case was on appeal. The investigation regarding the complaint that had been filed in 1995 had ended. A right-to-sue letter had been issued, a right-to-sue letter that said that the EEOC could find nothing wrong with any of the conduct of the parties. That had already been issued years earlier. The complaint had been dismissed. Over a year had passed between the incident and the case having been dismissed, and nothing had happened. No complaint had been filed. There was nothing that would have led to an EEOC investigation of that claim. And that's quite apart from the record. Counsel, why then did Judge Letts deny your motion to dismiss, for summary judgment, for failure to exhaust administrative remedies and strike those portions of your proposed findings of fact and conclusions of law relating to exhaustion? I'm not sure. That's what led to our appeal of that. We think that he didn't give any written reasons that I have seen. Did he give any oral reasons? He gave no oral reasons, no written reasons. We believe that it's clear. I think that the judge never really reached those issues. I think that he was convinced that what he had done before was clearly dispositive of the case, and I think he just never got to it. He didn't say that. You mean what he had done on the motion to dismiss? The motion to dismiss and the summary judgment motion, that disposed of the case, I think, as far as he was concerned, and I think that he never had to reach those other issues. And I don't think he ever did. But, again, there was nothing in the record that explained why he did what he did and whether or not he reached that. Other than the claim that relates to exhaustion, which I assume goes to the question of retaliation. Is that right? The unexhausted claim that he's been the judge has evidently left in place goes only to the retaliation claim against CBS? It goes specifically to the retaliation claim, but the retaliation claim, in some ways, the discrimination, the acts of discrimination, because all of the conduct, all of the allegations in the complaint, are incorporated into the retaliation cause of action, the count. And so to that extent, it perhaps implicates other things as well, but certainly it specifically dealt with the retaliation. The discrimination claim, I assume we need to deal with, I won't say necessarily in the merits, but we need to deal with it in the context of the motion to dismiss in the summary judgment, correct? Yes. Let me address the, well, the summary judgment motion that dealt with specifically the Craig Anderson incident. That's the retaliation. That's a retaliation claim and also dealt with the Frank Dawson incident. There was a record with, that was created with respect to the Craig Anderson issue, and there was discovery that was permitted. There was probably the, the order that granted the motion to dismiss was, I believe, November of 2002, and the discovery, the motion to, for summary judgment wasn't heard until sometime in, well, I think I've got my years wrong. I think I'm up one year. But there was about a seven to eight-month period during which discovery was permitted on the claims that were permitted to go forward after the motion to dismiss had been granted. That led to the summary judgment motion. That led to the record that the summary judgment motion was decided on. And if you look at the record starting first with Craig Anderson, there is nothing in the record that would support a cause of action. I think that there is no disputed issue of fact with regard to the Craig Anderson issue. Craig Anderson never, ever heard that CBS had any disputes going with Mitch D'Averella, with the plaintiff in this case. Never, ever entered into his thinking because he didn't know of the existence. And there is nothing in the record that would dispute that. And the record is clear that Mr. Anderson made a decision among three writers, and he picked the one that he thought was best for that particular project. And there is nothing that would dispute that. So with respect to the summary judgment on that case, not only does the exhaustion, I think, dispose of that, but the summary judgment motion is a motion that should be affirmed because the judge correctly decided that issue on the record. Mr. Shields, is the only thing left in this case, then, the questions that relate to the exhaustion claims? In other words, the district judge said, I'm not going to grant your motion with respect to the exhaustion. So what does that preserve in the case? And are there any other claims that are not before the Court today that are still alive? There are no other claims that are alive. There are no claims at all that are alive because the judge disposed of all of the issues. He disposed of the entire case. Even though he did not decide the case on exhaustion, he did decide all of the case, all of the issues on either the motion to dismiss or the summary judgment motion. Now, let's ask you, then, about the motion to dismiss, because that's where I think that Mr. Meyer focused his attention on, the half-pay allegations and the claim that, albeit a third amended complaint, that it was improper to dismiss these at that stage. Well, that's why we have to go back in time to what happened on the first appeal. What happened on the first appeal and what the Court decided when it decided the first appeal was that the Court below correctly decided the issue, that the Court below properly dismissed the complaint because it failed to state the cause of action. And the only decision the Ninth Circuit made was to give the plaintiff an opportunity to go back to amend. And the allegation that a plaintiff's counsel referred to was an allegation almost verbatim. It appears in paragraphs 58, 59, and 60 of the second amended complaint. He juggled the allegations around. They are renumbered. But it is the same allegation that he asserted in the third amended complaint that had been previously determined to be insufficient. And the district court, recognizing that that allegation had previously been determined to be insufficient, said to the plaintiff, well, what do you have on that? Do you have anything in addition? What did you do to amend to state a cause of action? And they did nothing because the allegation that plaintiff's counsel talked about, and he talked about her being qualified, but he never, ever said anything about what she was qualified for, what she supposedly applied for. If she applied for a position, what position did she apply for? What qualifications did the position that she actually applied for, what qualifications were necessary? What qualifications did she have that fit that position? What position was not filled by hiring her, but was filled by someone else? And that's what concerned the district court. We had been through this three times. There had been three complaints before we ever got to the first appeal. So when we got to the first appeal and they got, plaintiffs got another chance to amend to state facts, they didn't. And because they didn't, the court properly dismissed the complaint, because they the decision had already been rendered that the complaint was insufficient. The court in very clear terms said, we agree with the district court below that the complaint as framed failed to state a claim. Now, with respect to the exhaustion, counsel, I'm going to come back to the exhaustion and I'm going to make one more pass at it just to make sure I understand what's going on. Your theory of the case here is that the district court in granting the motion to dismiss And therefore, the exhaustion claim he could deny simply because it was an alternate grounds for deciding the case. That's correct. Okay. That's correct. And, you know, again, without knowing precisely what the judge said or what the judge thought, because he did not, in any of his rulings or in any of the hearings that occurred prior to these rulings coming out, he did not express a view one way or the other with respect to the exhaustion issue. Justice was never before him. The only time it was before him was in connection with the summary judgment motion. And he simply denied it without comment, without any reason. Counsel, all you have to do today is to ask us to affirm the judgment. We don't have to reverse judge left on the grounds of exhaustion. Correct. And that is an alternative ground that we raised because we thought that the exhaustion issue was dispositive and that was a sort of an ancillary appeal, but certainly to the extent that the judgment of the district court is affirmed by this Court never has to reach our appeal. Let me – there are so many issues here. Let me also address the individuals, because the individuals are a little bit different from the entity itself. There is nothing anywhere that is alleged, there is no evidence, nothing regarding the individuals. And the individuals after the first appeal were only left in on the State FIHA case, and we have cited Cole v. Antelope Valley for the proposition that clearly the exhaustion issue with respect to the individuals means that they are out. The Cole case very clearly says that you don't specifically put the name of the target party in either the heading or the body, that you simply cannot pursue a FIHA claim against individuals. So it seems to me clear that with respect to them, there can be no issue as a matter of law on them as well. Now, I think that we did deal quite extensively with the motion to dismiss, and the context of the summary judgment motion should be – you should keep in mind what the summary judgment motion did. When the summary judgment motion came in, and I recommend that the Court go back and look at the Frank Dawson declaration. The Frank Dawson declaration is astonishing for what it doesn't do. Everything that the plaintiff says and asserts about the Frank Dawson incident, Frank Dawson doesn't say any of that happened. The things that Frank Dawson says are amazing. He doesn't – he says that he can't recall saying anything like that to the plaintiff. He says, it is – while I do not remember it, it is possible that I received a call at that time from Ms. Varela, and she said something to the effect that, hey, can I come in? And I said something to the effect, come on in. And in paragraph nine, he talks further about this meeting that he and Ms. Varela, who was a friend of his, he had. But he never says that he said the things that her complaint is predicated on. Never. I see the hue of this red stop sign. When I put on my glasses, I can even see the stop. So you can see the numbers? So do you want to make a closing comment or simply? The closing comment is that the context of this case certainly has to be kept in mind. This case is a case that has been pending for a long, long, long time. The district court certainly had that in mind when he required that the plaintiff come up with some real allegations and some real facts to the extent that it had any. They had had plenty of opportunity to amend the complaint, to allege them. They didn't, and he properly dismissed the complaint. Thank you. Thank you. Mr. Meyer. If I could address a couple of the points made by defense counsel. The first defense counsel suggested that Judge Lips dismiss this on a rule 8 grounds. My understanding, it was really a motion to dismiss on 10B6 rather than a rule 8. The first court of appeal, if my memory is correct, ruled on the rule 8 grounds rather than the 10B6. So there was some confusion in his argument as to getting the rule reversed. There's also, as to Riders Guild, paragraph 15 refers to some allegations against the Riders Guild in terms of the half-pay program. If I can move on to also the second defense counsel for CBS suggested that rule 6, rule 8, this was a rule 8, and that additionally is our contention, this was not dismissed on a rule 8 but the 12B6. And the prior court of appeal never stated that the specific allegation did not pass Muster to go to trial. It ruled on grounds of rule 8 that in total, you know, our complaint did not pass the rule 8 grounds. We've corrected that. We added and changed paragraphs. This is the same case. There's going to be paragraphs and allegations that are the same. It would be fraudulent for us to come in and file a complaint that was completely different because it wouldn't be the same case. The necessity has to be some paragraphs that are the same. There were paragraphs that were added that covered the things that were alleged to be missing. So to say that this is the exact same allegations is not correct. Defense counsel also wants us to list the specific jobs she applied for, you know, who got essentially they're trying to have us do an insurmountable burden of producing evidence in advance of discovery, and these are facts that only defendant can know. She stated in the complaint or it's written in the complaint that she applied for a position, and to go beyond that under cases such as Sparrow is really requiring the plaintiff to do something that's essentially not really possible for a plaintiff to do and would eliminate almost all discrimination cases. I think we have your point in mind and your time has expired. Thank you. Okay. If I could. The case of Varela v. CBS Broadcasting is submitted. Thank you, Madam Chair. Thank you. The last case for argument this morning is Jerry's Famous Deli v. Constantino Tapanakallu, and I'm sure I mispronounced it and counsel will help me out. Jerry's Famous Deli. Thank you.
judges: McKeown, Bybee, Breyer